UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JENNIFER HAAS, as Special Administrator/Representative of the Estate of Jason Haas, Deceased,

Plaintiff,

v.

TODD BOLES,
CITY OF SALEM,
KEVIN CRIPPS,
MARION COUNTY ILLINOIS,
DALE EDDING,
L SMITH,
L BRUBAKER,
D DUNCAN,
LUCAS CRAWFORD,
A GARRETT,
E FOX,
HUGHES P LOCHARD,
ADVANCED CORRECTIONAL HEALTHCARE, INC.,
AUSTIN SCHORECK, and
TYLER ROSE,

Defendants.

Case No. 26-cv-00591-JPG

**MEMORANDUM AND ORDER**

This case is before the Court on two motions to dismiss. The first motion was filed by Defendants Marion County ("the County"), Sheriff Kevin Cripps ("Sheriff Cripps"), and County Deputies Dale Edding, L Smith, L Brubaker, D Duncan, Lucas Crawford, A Garrett, and E Fox (collectively the "Marion County Defendants") (Doc. 89). They ask the Court to dismiss Plaintiff Jennifer Haas's § 1983 claims against them for failure to state a claim and her state-law claims on the grounds that they are immune from liability under the Illinois Tort Immunity Act. Plaintiff filed a response (Doc. 107). The second motion was filed by Defendant Advanced Correctional

Healthcare ("ACH") (Doc. 95). It asks the Court to dismiss all of Plaintiff's claims against it for failure to state a claim and moves to strike several allegations from the amended complaint. Plaintiff filed a response (Doc. 109), and ACH filed a reply (Doc. 110).

## I. BACKGROUND

Two weeks prior to May 2, 2025, Amanda Harrell, the nurse employed to provide nursing services at the Marion County Jail, notified her employer that she would be resigning from her position effective May 2, 2025.

On May 2, 2025, two Salem Police Officers arrived at Jason Haas ("Haas")'s home and took him into custody. Haas advised the officers that his medical needs involved daily heart medication and that he was experiencing alcohol withdrawal. The officers did not acquire Haas's daily heart medication when they took him into custody. The same day, Haas was transported to and booked into the Marion County Jail.

On May 4, 2025, at approximately 10:50 PM, knowing that Haas had been suffering from alcohol withdrawal symptoms, Edding went to cell R-1 to check on him. He tried talking to Haas, but Haas would not respond. Edding saw Haas crawling on the floor in his cell and seeing things that were not there. Edding then went upstairs and advised Smith what he had seen, told him that he was concerned about Haas's well-being, and told him he thought Haas was getting worse.

At approximately 11:10 PM, Edding and Smith went into cell R-1 to do a protocol on Haas. Edding was worried about Haas's withdrawals and wanted to see if the doctor could give him something to help. Edding and Smith could not get a blood pressure reading because Haas would not stay still long enough.

At approximately 11:20 PM, Edding advised Hughes P. Lochard, M.D. ("Dr. Lochard"),

by telephone what was going on with Haas and described the way he was acting. Dr. Lochard said that it sounded like typical alcohol withdrawals and recommended they give him 2.5 mg of haloperidol to calm him down and help him with the withdrawals. Smith, Brubaker, and Edding then brought Haas out of his cell, sat him on the bench in booking, gave him the haloperidol, and took him back to his cell.

While they were giving Haas the haloperidol, Brubaker told Edding that Plaintiff was on the phone. Edding told Brubaker to place her on hold and that he would talk to her when he was done. When Edding spoke with Plaintiff, she told him she was worried about Haas going through alcohol withdrawal. Edding told her he could not tell her much because of HIPAA, but he was also concerned about the withdrawal symptoms. Plaintiff told Edding that Haas has atrial fibrillation and gets a rapid heart rate, but he does not have his heart medication. Edding asked Plaintiff if she could bring Haas's medication in the morning because it was so late and the nurse could approve the medication then.

On May 5, 2025, at approximately 12:50 AM, Fox and Duncan conducted a cell check in booking. When Duncan passed Haas's cell, he checked on him because he was going through alcohol withdrawals. Duncan could tell Haas was withdrawing and was laying down. He also observed that Haas was breathing.

At approximately 1:03 AM, Edding went to cell R-1 to check on Haas. He noticed that Haas was on his back with foam coming out of his mouth. Edding told Duncan to let him in the cell and to call EMS. Upon entering the cell, Edding noticed Haas's breathing was labored. Edding placed Haas on his side to keep him from choking.

Duncan called 911 and advised that they had a 40 something male that was currently going

through alcohol withdrawals and appeared to have aspirated. The 911 dispatched advised they would get EMS on route. Duncan then returned to Haas's cell. He could tell that Haas had labored breathing and foam around his mouth.

Crawford subsequently entered Haas's cell and could see that he was foaming at the mouth and was having a seizure. Duncan, Crawford, and Edding kept him on his side until EMS arrived.

At approximately 1:10 AM, EMS arrived to assess Haas. They transported him to Salem Township Hospital. Shortly after arriving at the hospital, Haas died.

As a result of these events, Plaintiff filed an amended complaint that asserts fifteen claims against fifteen defendants. The instant motions challenge the following eight claims:

Count 2: Section 1983 Claim Against the County Deputies

Count 5: *Monell* Claim Against Sheriff Cripps, the County, and ACH

Count 8: Illinois Survival Act Claim Against the Marion County Defendants

Count 9: Illinois Wrongful Death Act Claim Against the Marion County Defendants

Count 11: Illinois Survival Act Claim Against ACH (Respondeat Superior).

Count 13: Illinois Wrongful Death Act Claim Against ACH (Respondeat Superior)

Count 14: Illinois Survival Act Claim Against ACH (Institutional Negligence)

Count 15: Illinois Wrongful Death Act Claim Against ACH (Institutional Negligence)

## II. LEGAL STANDARD

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a

complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl. Corp.*, 550 U.S. at 555; *EEOC. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp.*, 550 U.S. at 556). Although liberal federal notice pleading standards ensure that even non-detailed complaints can survive a motion to dismiss, they will not prevent dismissal of complaints that plead too much. A case can be dismissed because a complaint pleads facts establishing that the defendant is entitled to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

## III. ANALYSIS

### A. Section 1983 Claims:

#### *i. Count 2 – Section 1983 Claim Against the County Deputies:*

To state a § 1983 claim against an individual, a plaintiff must allege that the defendant deprived her of rights secured by the Constitution or laws of the United States and was acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *McKinney v. Duplain*, 463 F.3d 679, 683 (7th Cir. 2006). "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation. The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of*

*Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal citation and quotations marks omitted).

Plaintiff alleges that the County Deputies violated Haas's Fourteenth Amendment rights. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. This clause prohibits all forms of punishment of pretrial detainees, including the deprivation of basic human needs, such as medical care. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015); *Hardeman v. Curran*, 933 F.3d 816, 822–23 (7th Cir. 2019). To state a claim under the Fourteenth Amendment, Plaintiff must plausibly allege that each individual Defendant acted "purposefully, knowingly, or perhaps even recklessly" in the denial of Haas's medical care, and the conduct was objectively unreasonable. *See Ferguson v. Cook Cnty. Corr. Facility/Cermak*, 836 F. App'x 438, 441 (7th Cir. 2020) (quoting *Miranda v. Cnty. Of Lake*, 900 F.3d 335, 353 (7th Cir. 2018)).

Plaintiff has sufficiently pleaded a claim against Edding and Smith. She alleges that Edding and Smith knew that Haas was experiencing alcohol withdrawal, knew that no jail nurse was available to evaluate him, and watched his condition progressively worsen, to the point that he exhibited alarming symptoms, including hallucinations and crawling on the floor, yet still delayed obtaining emergency medical care for him. She further alleges that, once Edding decided to call Dr. Lochard, the on-call physician, he failed to provide Dr. Lochard with an accurate and complete description of Haas's condition before Dr. Lochard made treatment decisions. Finally, she alleges that, after haloperidol was administered as directed by Dr. Lochard, Edding and Smith failed to adequately monitor Haas, resulting in a delay in emergency medical treatment until Haas was discovered lying on his back with foam coming from his mouth. These allegations are sufficient to plausibly allege that Edding and Smith acted knowingly or recklessly in denying Haas medical

care and that their conduct was objectively unreasonable.

Although non-medical jail staff generally may rely on medical professionals to provide appropriate medical care, an exception exists where non-medical jail staff have reason to know that an inmate is not receiving adequate medical treatment. See *Miranda*, 900 F.3d at 343. The facts alleged here, viewed in Plaintiff's favor, fit squarely within the exception. She alleges that Edding and Smith delayed in seeking emergency medical care and failed to provide Dr. Lochard with complete information. Taken together, these allegations support an inference that Edding and Smith had reason to know that Haas was receiving inadequate medical treatment and, therefore, were not entitled to rely on Dr. Lochard's advice. As such, the Court will allow Count 2 to proceed against Edding and Smith.

However, Plaintiff fails to allege that Brubaker, Duncan, Crawford, Garrett, and Fox were personally involved in the alleged constitutional deprivation. Her allegations that Brubaker helped administer haloperidol to Haas and told Edding that Haas's wife was on the phone; that Duncan checked on Haas and observed that he was experiencing alcohol withdrawal, was laying down, and was breathing; that Crawford kept Haas on his side until EMS arrived; and that Fox conducted a cell check in booking do not connect any of these Defendants to their knowledge of Haas's medical condition or to the alleged denial of Haas's medical treatment. Plaintiff makes no specific allegations against Garrett and thus fails to plausibly allege that Garrett knew of Haas's medical condition. Without personal involvement in the alleged constitutional violation, these Defendants cannot be held liable under § 1983. Thus, the Court will dismiss Count 2 without prejudice with respect to these Defendants.

ii. *Count 5 – Monell Claim Against Sheriff Cripps, the County, and ACH:*

A municipality may not be held vicariously liable for the actions of its employees under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). It may be liable, however, for its own actions as a municipality. *Id.* at 690–92. A municipal action occurs where (1) the municipality had an express policy calling for a constitutional violation, (2) the municipality had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law, or (3) if a person with final policymaking authority for the municipality caused the constitutional violation. *Id.* at 694. And the policy, custom, or decision must be the moving force behind the constitutional violation. *Id.* As with her individual-liability claim, Plaintiff's *Monell* claim is based on an alleged deprivation of Haas's Fourteenth Amendment rights.

Plaintiff has plausibly alleged a *Monell* claim against all three Defendants. She alleges that Sheriff Cripps, as final policymaker, failed to establish policies to ensure that, among other things, his jail staff timely acquired and administered prescribed medications to detainees and were trained to communicate material medical information to treatment providers. She also claims that Sheriff Cripps maintained contractual medical services that created disincentives to timely outside hospitalization. She alleges that Sheriff Cripps failed to establish these policies, or maintained these policies, despite knowing that their absence or continued use would jeopardize the life, health, and welfare of pretrial detainees, and as a result, Haas received constitutionally deficient medical treatment. These allegations are sufficient to state a *Monell* claim against Sheriff Cripps. They are also sufficient to state a claim against the County. *See Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003) ("[A] county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on)

in an official capacity.”).

She further alleges that ACH maintained on-call physician model with minimal on-site medical coverage, relied on telephone consultations to evaluate serious medical emergencies without an in-person medical assessment, and failed to require hospital transfer when a deteriorating detainee could not be reliably assessed by non-medical jail personnel, despite the known risk that inmates with serious medical needs would not receive adequate care and would suffer serious injury or death. Her allegation of knowledge is supported by references to prior lawsuits and incidents involving ACH that she claims show a documented history of similar, preventable deaths. She alleges that, because of these practices, Haas received constitutionally deficient medical treatment. Taken together, these allegations are sufficient to state a claim against ACH. Whether ACH's practices were cost-saving and whether the prior cases cited by Plaintiff ultimately establish a widespread practice will be addressed at a later stage of the proceeding, after the parties have completed discovery.[1] Because Plaintiff has plausibly alleged a *Monell* claim against Sheriff Cripps, the County, and ACH, the Court will allow Count 5 to proceed against all three Defendants.

B. State Law Claims:

i. *Counts 8 and 9 – Illinois Survival Act and Illinois Wrongful Death Act Claims Against the Marion County Defendants:*

The Illinois Tort Immunity Act provides immunity to public employees for injuries caused by their failure to furnish or obtain medical care for a prisoner in his custody and for injuries caused

[1] ACH asks the Court to strike Plaintiff's allegations that its practices were cost-saving and Plaintiff's citations to prior cases against ACH. However, ACH has not met its burden to show that these allegations have no possible relation to this litigation. *See* 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed.); *Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998). Thus, the Court declines to strike these allegations.

by their negligent misrepresentation or provision of information. *See* 745 ILCS 10/4-105, 2-210. However, there is an exception where the public employee engages in willful and wanton conduct. *See* 745 ILCS 10/4-105; *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 973 N.E.2d 880, 893–94 (Ill. 2012). Willful and wanton conduct is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

Plaintiff has sufficiently alleged that Edding and Smith acted with utter indifference or a conscious disregard for Haas's medical needs by: (1) delaying in obtaining emergency medical treatment despite knowing that Haas was experiencing alcohol withdrawal and there was no nurse on staff; (2) failing to provide an accurate and complete description of Haas's condition to Dr. Lochard; and (3) failing to adequately monitor Haas after medication was administered. In addition, while non-medical jail staff generally may rely on medical professionals to provide appropriate medical care, Plaintiff has alleged that Edding and Smith, by delaying treatment and providing incomplete information, had reason to know that Haas was not receiving adequate medical treatment. Therefore, the Court will allow Counts 8 and 9 to proceed against Edding and Smith.

However, Plaintiff fails to plausibly allege that Brubaker, Duncan, Crawford, Garrett, and Fox engaged in willful and wanton conduct. As explained above, her allegations do not connect any of these Defendants to their knowledge of Haas's medical condition or to the alleged denial of Haas's medical treatment. Thus, they are insufficient to plead that these Defendants acted with

utter indifference or conscious disregard for Haas's medical needs.[2] Accordingly, the Court will dismiss Counts 8 and 9 without prejudice as to Brubaker, Duncan, Crawford, Garrett, and Fox.

The Illinois Tort Immunity Act also provides immunity to public employees for injuries caused by his act or omission in determining policy when acting in the exercise of discretion and to local public entities and public employees for failure to provide sufficient equipment, personnel, supervision, or facilities in a jail. *See* 745 ILCS 10/2-201, 4-103. This immunity is absolute, meaning it applies regardless of whether the public employee engaged in willful and wanton conduct or abused his discretion. *See Ries v. City of Chicago*, 950 N.E.2d 631, 640–43 (Ill. 2011) (explaining that if an Illinois Tort Immunity Act provision does not contain an immunity exception or willful and wanton misconduct, then no such exception exists).

Although Sheriff Cripps and the County are entitled to immunity for their failure to provide equipment, personnel, supervision, or facilities in the jail, Plaintiff's allegations fall outside the scope of this immunity. Plaintiff does not allege that Sheriff Cripps or the County failed to adequately staff, equip, supervise, or maintain the Marion County Jail. Instead, she alleges that they failed to establish policies that they knew or should have known would result in (1) a failure to ensure immediate acquisition of cardiac medications for detainees with known cardiac conditions, (2) a failure to require complete and accurate communication of medical information to medical providers, and (3) a failure to require hospital transfer for obvious medical emergencies, thereby creating a substantial risk of serious injury or death to pretrial detainees like Haas.

Any immunity available to Sheriff Cripps for actions taken when determining policy in the

---

[2] The Court is not making any definitive ruling on whether Brubaker, Duncan, Crawford, Garrett, and Fox are entitled to qualified immunity. It just finds that, based on the allegations in amended complaint, Plaintiff has failed to plausibly allege that these Defendants' conduct was willful and wanton.

exercise of his discretion is not grounds for dismissal. "For § 2-201 immunity to apply, the local public employee must have been making a policy choice *and* exercising discretion." *Doe ex rel. Doe v. White*, 627 F. Supp. 2d 905, 922 (C.D. Ill. 2009). "A policy choice is one which 'require[s] the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests.'" *Id.* (quoting *Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848, 852 (Ill. 2001)). Here, the Court can only consider the allegations in the amended complaint. *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010) ("[A] Rule 12(b)(6) motion must be decided solely on the face of the complaint and any attachments that accompanied its filing."). Those allegations do not provide any information about what competing interests Sheriff Cripps balanced, if any. As such, the record is inadequate for the Court to determine whether he is entitled to immunity under § 2-201. The Court will allow Counts 8 and 9 to proceed against Sheriff Cripps and the County.

ii. *Counts 11 and 13 – Illinois Survival Act and Wrongful Death Act Claims Against ACH (Medical Malpractice):*

To prevail on a medical malpractice claim under Illinois law, a plaintiff must prove: "(1) the standard of care in the medical community by which the physician's treatment was measured; (2) that the physician deviated from the standard of care; and (3) that a resulting injury was proximately caused by the deviation from the standard of care." *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000).

In addition to the elements described above, Illinois law imposes another requirement under 735 ILCS 5/2-622(a). Section 2-622(a) requires a plaintiff filing a medical malpractice case to file, either with her complaint or within a specified period thereafter, an affidavit declaring that she has consulted a knowledgeable health professional who has reviewed the medical records and

documents and has determined in a written report that "there is a reasonable and meritorious cause" for the filing of the malpractice action. 735 ILCS 5/2-622(a). The written report must be attached to the affidavit. *Id.* This is often referred to as the certificate of merit requirement. The purpose of the requirement is to reduce the number of frivolous malpractice suits. *Ebbing v. Prentice*, 587 N.E.2d 1115, 1117 (Ill. App. Ct. 1992). The failure to file the certificate of merit is grounds for dismissal of the action. *See* 735 ILCS 5/2-622(g).

Plaintiff has not filed a certificate of merit as required by § 2-622(a), and as such, ACH asks the Court to dismiss her malpractice claims. The Court declines to dismiss her claims on this basis. After the Supreme Court's decision in *Berk v. Choy*, 607 U.S. 187 (2026), it is unclear whether § 2-622(a) applies in federal court at all. The Court need not resolve this issue at this stage, however, because Seventh Circuit precedent makes clear that, if § 2-622(a) applies, its requirements are addressed at summary judgment rather than at the dismissal stage. *See Young v. United State*s, 942 F.3d 349, 351 (7th Cir. 2019) ("[W]e now conclude that a complaint in federal court cannot properly be dismissed because it lacks an affidavit and report under § []2-622."). Accordingly, the Court will allow Counts 11 and 13 to proceed against ACH.

iii. *Counts 14 and 15 - Illinois Survival Act and Wrongful Death Act Claims Against ACH (Institutional Negligence):*

In Illinois, a medical provider "may be held liable for institutional negligence based on breach of an independent duty to assume responsibility for care of patients." *Dawson v. United States*, No. 3:16-cv-00827-DRH-SCW, 2017 WL 977822, at *4 (S.D. Ill. Mar. 14, 2017). "Ordinarily, this duty is administrative or managerial in character." *Jones v. Chicago HMO Ltd. of Illinois*, 730 N.E.2d 1119, 1128 (Ill. 2000). To fulfill this duty, the medical provider is judged against what a reasonably careful medical provider would do under the same circumstances. *Id.*

Plaintiff has sufficiently pleaded an institutional negligence claim by alleging that: (1) ACH had a duty to ensure that Haas received proper medical care; (2) ACH breached the standard of care by, among other things, implementing a business model that employed an on-call physician who covered multiple jails in a large reason by telephone only, without adequate on-site medical presence, and failing to establish and implement policies or procedures requiring timely transfer of inmates to outside medical facilities when inmates exhibit signs and symptoms of life threatening medical emergencies that cannot be adequately treated within the jail setting; and (3) these policies caused Haas's pain and suffering, and ultimately led to his death. As such, the Court will allow Counts 14 and 15 to proceed against ACH.

## IV. CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the Marion County Defendants' Motion to Dismiss (Doc. 89);
    - The motion is **GRANTED** to the extent it seeks to dismiss Counts 2, 8, and 9 as to Brubaker, Duncan, Crawford, Garrett, and Fox, and those claims are **DISMISSED without prejudice**;
    - The motion is **DENIED** in all other respects;
- **DENIES** ACH's Motion to Dismiss (Doc. 95); and
- **ORDERS** that Plaintiff shall have up to and including October 26, 2026, to file a second amended complaint.

**IT IS SO ORDERED.**
**DATED**: **September 24, 2026**

**J. PHIL GILBERT**
**United States District Judge**